UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSE D. VARGA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:20-CV-575-JPK |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed on July 9, 2020, and Plaintiff's Opening Brief [DE 20], filed on April 2, 2021. Plaintiff requests that the May 17, 2019 decision of the Administrative Law Judge (ALJ) denying her claims for disability insurance benefits and supplemental security income be reversed and remanded for an award of benefits, or, in the alternative, for a new hearing. For the following reasons, the Court grants Plaintiff's request for remand, but declines to award benefits.

## PROCEDURAL BACKGROUND

On April 12, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income. Plaintiff alleged disability beginning March 10, 2014. Plaintiff alleged disability due to osteoarthritis, fibromyalgia, degenerative sacroiliac joint, back injury, knee injury, ankle injury, depression, anxiety, and panic attacks. (AR 253).[1] Plaintiff's April 2017 applications were denied initially and on reconsideration. (AR 94-139). Plaintiff then requested a

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

hearing, which was held before an Administrative Law Judge (ALJ) on March 11, 2019. (AR 60).

On May 17, 2019, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since March 10, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: mild degenerative disc disease of the cervical spine, mild degenerative disc disease of the thoracic spine, mild degenerative disc disease of the lumbar spine, degenerative joint disease of the sacroiliac joints, deQuervian syndrome, fibromyalgia, obesity, and bilateral carpal tunnel syndrome.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. … [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to lifting, carrying, pushing, and/or pulling up to 10 pounds occasionally and less than 10 pounds frequently. She is limited to standing and walking up to 2 hours of an [8-hour] workday and sitting up to 6 hours in an 8-hour workday, with normal breaks. She can never climb ladders, ropes, and scaffold, and occasionally limb ramps and stairs. She can occasionally balance, stoop, kneel and never crouch or crawl. She is to avoid all exposure to unprotected heights and moving mechanical parts. She can frequently handle and finger with her bilateral upper extremities. She is to avoid all exposure to extreme cold as part of the job duties. She must use a [cane] to ambulate.
>
> 6. The claimant is capable of performing past relevant work as an Appointment Clerk.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2014, through the date of this decision.

(AR 19-27).

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

Plaintiff appealed, but the Appeals Council denied review. (AR 1-6). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff asserts two grounds for reversal of the ALJ's decision: that the ALJ erred in failing to submit new medical evidence to medical expert review, and that the ALJ erred in weighing the opinion of Plaintiff's treating pain management specialist, Dr. Stephen Ribaudo. (Pl.'s Br. 16-24, ECF No. 20). The Court first considers the ALJ's treatment of Dr. Ribaudo's opinion before turning to the new medical evidence.

**I.        Dr. Ribaudo**

Plaintiff argues that the ALJ erred by failing to adequately support his evaluation of the opinion of Dr. Ribaudo, the pain management doctor. The Commissioner argues that the ALJ properly supported his findings as to Dr. Ribaudo's opinion.

For claims filed after March 27, 2017, as Plaintiff's was, the regulations no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, the so-called "treating physician rule" – which gave special deference to a claimant's own doctor unless the ALJ provided a "good reason" – no longer applies. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). Nonetheless, the ALJ must still provide a written explanation for his conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion. *See Giza v. Kijakazi*, No. 2:20-CV-00263-SLC, 2021 WL 4551387, at *5 (N.D. Ind. Oct. 5, 2021); *Inman v. Saul*, No. 1:20-CV-231-DRL, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021); *Tammy M. v. Saul*, No. 2:20-CV-285-WCL, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021).

Moreover, the ALJ must still weigh the same factors in considering medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant, including the

length and purpose of the relationship; (4) specialization; and (5) any other factors that would "tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c, 416.920c. The "most important factors" are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ is not required to explain how the other three factors were considered, but can address them as appropriate. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In this case, the ALJ described Dr. Ribaudo's February 2019 treating source statement as "not persuasive." (AR 25). In summary, Dr. Ribaudo stated that Plaintiff's pain would frequently compromise her ability to perform simple work tasks. (AR 809). Among other limitations, he opined that she could walk for one block before stopping to rest, sit for one hour and fifteen minutes at a time, stand for one hour and fifteen minutes at a time, and sit for less than two hours and stand or walk for about two hours in an eight-hour work day. (AR 809-10). Plaintiff would need to shift from sitting to standing or walking at will, and would need ten-minute breaks every two hours. (AR 810). The doctor opined that Plaintiff could never lift or carry 10 pounds, and could rarely lift and carry less than 10 pounds. (AR 810). She could never twist, stoop, crouch, or climb ladders, rarely climb stairs, and could spend only 20% of the workday grasping or reaching overhead. (AR 811). Finally, Dr. Ribaudo opined that Plaintiff would be absent from work four days per month due to her impairments or treatment. (AR 811).

The ALJ provided the following analysis of Dr. Ribaudo's opinion:

> Dr. Ribaudo limited the claimant much further than the RFC herein. For example, he found the claimant could never lift more than 10lbs and could rarely lift less than 10lbs. This opinion is inconsistent with the mild and routine findings within the medical evidence of record. For example, the claimant reported at her consultative examination that she could lift up to 30lbs [citation omitted]. Therefore, this opinion is not persuasive.

(AR 25). Plaintiff claims the ALJ failed to articulate a "logical and accurate" rationale for dismissing Dr. Ribaudo's opinion and failed to properly discuss the supportability and consistency

6

of the opinion. Specifically, Plaintiff notes that the ALJ cited only one apparent inconsistency in the doctor's opinion (the lifting issue) and failed to discuss much of the most recent medical evidence, including the notes of Plaintiff's regular treatment with Dr. Ribaudo in the months preceding his February 2019 opinion.

It should be noted that there was evidence in the record that the doctor underestimated Plaintiff's lifting ability; in December 2018, just two months before Dr. Ribaudo's opinion was issued, an examination revealed "Strength [ ] 5 out of 5 in all muscle groups of the upper extremities . . . [Plaintiff] denies any significant weakness in either upper extremity." (AR 917). But the Court's review does not end there, because the ALJ's analysis of the opinion was not premised purely on the lifting issue, but rather on the alleged inconsistency between Dr. Ribaudo's opinion and the "mild and routine findings" the ALJ had identified throughout the record, of which the lifting issue was an "example." (*See* AR 23-25). The ALJ did not need to repeat his previous analysis of the medical evidence. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

In other words, the Court is not assessing whether the identification of a single inconsistency would have been an adequate basis to find the doctor's entire opinion "not persuasive." Because the ALJ's reasoning was explicitly premised on his broader conclusion about the "mild and routine findings" throughout the record, the Court's review is limited to that reasoning. *See Jeske v. Saul*, 955 F.3d 583, 588-90 (7th Cir. 2020) (at each step, the court's "review is limited […] to the ALJ's rationales," regardless of where those rationales appear in the decision) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

The question, then, is whether substantial evidence supports the ALJ's finding that Dr. Ribaudo's opinion was generally inconsistent with the medical record, based on the ALJ's

summary of the evidence throughout the RFC analysis. With due respect to the ALJ's efforts, the Court finds that he failed to draw a logical bridge from the evidence in the record to his conclusions about the purported inconsistencies in Dr. Ribaudo's opinion. As discussed more fully below, of the "mild and routine findings" catalogued by the ALJ, almost all were from July 2017 or earlier. (*See* AR 23-24; §A, *infra*). But there was evidence that Plaintiff's condition was worsening between 2017 and 2019, so it was not necessarily inconsistent for the doctor's 2019 opinion to reflect more severe limitations than the "mild and routine" 2017 findings would suggest. The ALJ never explained this logical leap.

### A. "Mild and routine findings" within the medical record

Because the ALJ's rejection of Dr. Ribaudo's opinion rests on whether the medical record sufficiently contradicted the doctor's opinion, the Court examines the aspects of the medical record that the ALJ found to be mild or routine. The ALJ began by addressing the imaging of Plaintiff's spine, which he found to "support[] a finding of only mild degenerative changes." (AR 23) (citing AR 398 ("no significant damage" to cervical spine); AR 400 ("normal" MRI of lumbar spine); AR 491 ("cervical spine unremarkable"). He cited to imaging of Plaintiff's spine from August 2018, roughly six months before Dr. Ribaudo's opinion, which showed "mild" degenerative changes. (AR 23) (citing AR 831-832, AR 894-895). The ALJ also cited a CT scan from December 2018, which showed no stenosis and no cervical spine fracture, although there were "inherent limitations" in the ability of that test to assess other kinds of disc abnormalities. (AR 885).

Next, the ALJ considered Plaintiff's physical examinations. He noted that at many of her exams, Plaintiff "frequently" displayed normal range of motion, gait, and no tenderness. (AR 23). However, all of those "normal" results came from 2017 or earlier.[3] (*Id.* citing AR 322, 331, 411,

---

[3] The ALJ acknowledged several exams that did show limited range of motion, abnormal gait, or tenderness, some of which occurred in 2018 or later. (*See* AR 23).

611, 653, 704, 706, 716, 841). The ALJ also noted that, while Plaintiff occasionally used a cane or a walker, the record was "unclear" as to whether these were prescribed, and she was sometimes able to walk without them. (AR 23-24). The citations showing Plaintiff's ability to walk all came from 2017 or earlier, except for one note about Plaintiff's ambulation from a December 2018 visit to the emergency room, after which a nurse wrote "Pt. ambulates to lobby to await ride [home]." (AR 24 (citing AR 867)). Next, the ALJ noted that Plaintiff had treated her impairments "conservatively," with physical therapy, injections, and medications; but again, almost all the accompanying citations are from 2017, except for Plaintiff's injections for fibromyalgia (March and May 2018) and Plaintiff's emergency room visits (December 2018 and February 2019), which were cited as evidence of conservative treatment. (*See* AR 24 (citing AR 758, 770, 772, 888-953). The ALJ then discussed several of Plaintiff's impairments specifically, pointing to evidence of mild or "normal" findings specific to each, from 2017 or earlier.[4] In summary, while the ALJ did catalog mild and routine findings, almost all of them were recorded more than a year before Dr. Ribaudo's report.

### B. Treatment records between October 2017 and December 2018

Although the ALJ extensively discussed imaging results and examination reports, he cited only twice to Plaintiff's treatment records after October 2017, which documented increasing levels of pain and worsening symptoms during Plaintiff's monthly visits to Dr. Ribaudo. In early January 2018, Dr. Ribaudo characterized Plaintiff's pain control as "suboptimal." (AR 717). Later that month, she reported worsening left hip pain over the last three months exacerbated by walking. (AR 727). Upon examination, another doctor found she was unable to stand straight, her upper

---

[4] (*See* AR 24 discussing degenerative joint disease (citing AR 357-60, showing "mild degenerative changes" in June 2015); fibromyalgia (citing AR 406, showing inconsistent findings of pain in March 2016); de Quervain and carpal tunnel syndrome (citing AR 411, 668, 705-06, showing normal grip and hand strength in March 2016, September 2017, and November 2017).

9

body leaned toward her right side above the hip, and she showed tenderness to palpation in her spine and hips. (AR 729). By March 2018, Plaintiff was limping in her appointment with Dr. Ribaudo, and her right knee was swollen. (AR 775). By March 31, 2018, Plaintiff reported continued knee pain, which was treated with a knee injection. (AR 762, 766). In May 2018, Dr. Ribaudo reported that Plaintiff's right knee was "very inflamed," and she received another knee injection. (AR 770). The ALJ identified these injections as examples of Plaintiff being treated conservatively, although Plaintiff reported in June that she had very little relief, and only briefly, from the injections. (AR 758, 762, 766).

By June 2018, Plaintiff's back pain was getting "a lot worse." (AR 758). In August 2018, Plaintiff obtained x-rays of her cervical, thoracic, and lumbar spine, which showed mild degenerative changes, which were referenced by the ALJ. (*See* AR 23 citing AR 894-95). In August, September, October, November, and December 2018, Plaintiff continued to complain of diffuse joint pain and soreness in her knees. (AR 742, 746, 750, 799, 803). In December 2018, Plaintiff went to the emergency room with bilateral numbness and neck pain. (AR 870-71). In February 2019, she returned to the emergency room with unresolved back pain, and demonstrated pain and spasm in her back along her paraspinal muscles. (AR 943-44). The ALJ likewise referred to these emergency room visits as evidence of conservative treatment, noting that she was treated with medication and eventually discharged. (*See* AR 24).

In summary, Dr. Ribaudo's treatment records indicate that Plaintiff's condition may have been getting worse between January 2018 and February 2019, when the doctor issued his opinion. But the ALJ did not discuss those treatment records, except to note that Plaintiff was treating her impairments conservatively (AR 24, citing AR 848, 860, 862); and that she sometimes appeared to be in "no acute distress" (AR 23, (citing AR 841, a record of her December 2018 emergency

room visit)).[5] In short, the ALJ highlighted the positive aspects of Plaintiff's visits with Dr. Ribaudo, while ignoring a substantial line of evidence, from those same records, that the treatments were temporary and ineffective. This was impermissible "cherry-picking." *See Deborah M. v. Saul,* 994 F.3d 785, 788 (7th Cir. 2021) (an ALJ need not discuss "every piece of evidence in the record" but must not "ignor[e] an entire line of evidence that supports a finding of disability.") (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)); *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (ALJs must not "highlight[] facts that support a finding of non-disability while ignoring evidence to the contrary").

This cherry-picking taints the ALJ's analysis of Dr. Ribaudo's opinion, and compels remand. Even under the more lenient standard that replaces the treating physician rule, the ALJ is specifically obliged to consider both the "supportability" and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(c)(1)-(2). "Supportability" is the extent to which the doctor's evidence and explanations support his conclusions; "consistency" is how well the opinion corresponds to the evidence from all sources. *Id*. Given that the ALJ did not consider the evidence of Plaintiff's worsening condition from Dr. Ribaudo's own records in 2018, any analysis of the "supportability" of the doctor's conclusion – i.e., the extent to which it conformed to those records – was fatally flawed. The fact that the ALJ did identify one apparent inconsistency between Dr. Ribaudo and

---

[5] If the ALJ found these two inferences to be inconsistent with the doctor's opinion, he did not provide a "logical bridge" to that conclusion. Although Plaintiff may not have been in "acute distress" in the emergency room, that does not necessarily mean she could not be limited in walking, standing, lifting, and sitting. *See Michael H. v. Saul*, No. 2:20-CV-232, 2021 WL 753906, at *7 (N.D. Ind. Feb. 26, 2021) ("The records . . . do not provide an explanation for what the doctor meant by 'no acute distress'. Thus, it was inappropriate for the ALJ to assume that the notations meant that Plaintiff did not experience limitations to the degree that he alleged."). And while the ALJ characterized injections to Plaintiff's joints as a conservative form of treatment for her fibromyalgia pain, the ALJ did not point to any evidence that a more aggressive treatment for fibromyalgia was available or appropriate. (*See* AR 24). On the topic of alternate treatments, Dr. Ribaudo noted after one of her injections: "There is always hope that more effective medication and treatment options will arise in the future." (AR 765).

the medical record, the lifting issue[6], does not relieve his obligation to compare the opinion against the doctor's more recent records. *See, e.g., Nicholas T. v. Kijakazi*, No. 4:20-CV-65, 2021 WL 3400895, at *3-5 (N.D. Ind. Aug. 4, 2021) (ordering remand despite isolated inconsistencies "premised on cherry-picked facts"). This is especially so when the undiscussed evidence predates the doctor's report and suggests that the claimant's condition is worsening.

**II.      New medical evidence**

Plaintiff specifically argues that the ALJ's failure to seek an expert opinion regarding her August 2018 x-rays, which showed mild degenerative changes to her spine, separately requires remand. Although the case is remanded on other grounds, the Court addresses this issue for completeness.

Generally, an ALJ must seek an expert's opinion to interpret new and "potentially decisive" medical evidence. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The Commissioner argues that the records clearly show only mild degenerative changes, and that Plaintiff has not shown why they need expert interpretation. It is true that not every scrap of evidence is potentially decisive; "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). The question is whether "the new information 'changed the picture so much that the ALJ erred by . . . evaluating himself the significance of [the subsequent] report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

---

[6] Specifically, the ALJ noted the difference between Plaintiff's examination in December 2018 (AR 917; strength 5 out of 5 and "no significant weakness" in the upper extremities) and Dr. Ribaudo's report in February 2019 (AR 810; Plaintiff could "never" lift more than 10 pounds, and "rarely" less than 10).

It should be noted that because the ALJ found Dr. Ribaudo's opinion unpersuasive, the only remaining medical opinions were the state agency consultant's reports in October and November 2017, which were themselves only "somewhat persuasive." (AR 696-707). The ALJ had no expert to shed any light on what (if anything) happened to Plaintiff's back in 2018 and 2019, but Plaintiff provided at least some evidence that whatever happened was significant, in the form of Dr. Ribaudo's records. *C.f. Keys*, 679 F. App'x at 481 (doctors' failure to review MRI reports was not error where the claimant "has not provided any evidence that the reports would have changed the doctors' opinions"); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (affirming denial of benefits where the claimant "never provided an opinion from a physician about the conclusion to be drawn from the various MRIs").

Although the ALJ did not say so directly, he may have concluded that the "mild" degenerative changes from 2018 did not significantly decrease Plaintiff's ability to walk, stand, or sit. (*See* AR 23 (characterizing the mild degenerative changes as "inconsistent with the claimant's subjective allegations")). But as the Seventh Circuit has warned ALJs, "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990)). Perhaps a mild degenerative change could have a significant impact on a person's physical capabilities, particularly one who had already been experiencing "mild degenerative changes" for several years. Without contemporaneous evidence or expert opinion to the contrary, it is hard to conclude that the x-rays were not at least "potentially decisive." *See, e.g., Kemplen v. Saul*, 844 F. App'x 883, 887-88 (7th Cir. 2021), as amended on reh'g in part (June 21, 2021) ("[T]he parties' differing positions as to what the MRIs depict highlight the need for someone with expertise to opine on what these MRIs . . . show about Kemplen's ability to use her hands and fingers."); *McHenry v.*

13

*Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (ALJ's characterization of an MRI report as consistent with older records, without expert opinion, was inappropriate: "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.") (citing *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018)).

### III. Request for Award of Benefits

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate … only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualifies for disability benefits." *Id.* at 415. Since it is not clear on the current record that Plaintiff is disabled, an award of benefits is not appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 20] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff against Defendant.

So ORDERED this 6th day of December, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT